**Linda LAWSON, Claimant/Respondent,**

v.

**FORD MOTOR COMPANY,**
Employer/Appellant.

No. ED 88584.

Missouri Court of Appeals,
Eastern District,
Division One.

March 20, 2007.

Benjamin A. Shelledy, St. Louis, MO, for appellant.

Evan J. Beatty, St. Louis, MO, for respondent.

CLIFFORD H. AHRENS, Presiding Judge.

Ford Motor Company and Ford Motor Company, Inc. (collectively referred to herein as "Ford") appeal the final award of the Labor and Industrial Relations Commission ("the commission") allowing compensation to Linda Lawson ("Lawson") for permanent partial disability and future medical care. Ford claims the commission applied an incorrect burden of proof in its award, and Ford also argues that the award of permanent partial disability and future medical benefits was not supported by competent and substantial evidence. Finding no error, we affirm.

Lawson began working for Ford in 1995. She worked as an assembler in the trim department for approximately one year and then moved to the instrument panel line. She began installing half shafts for steering wheels which required her to stand on a platform and reach into a box containing half shafts, take the half shaft out of the box and put it on the part, and attach a bolt to the shaft and tighten the bolt. Prior to 2001, she would stand on the platform the entire time; however, in 2001, the job changed. The tables which held the boxes containing the half shafts were moved, resulting in a ten to twelve inch gap between the table and her platform. The tables were bolted to the ground and could not be moved, so Lawson would have to leave her platform to obtain a half shaft. This resulted in the heel of her left foot falling down and hitting the concrete each time she had to reach for the stock table to get a half shaft. She estimated she installed approximately fifty-eight to sixty half shafts an hour. After the tables were moved, Lawson began having problems with her left foot. She sought medical attention, and eventually had surgery on her left foot. Lawson ultimately filed a claim for compensation in

2002 with the Missouri Department of Labor and Industrial Relations, Division of Workers' Compensation, alleging repetitive injury to her left heel and foot. She amended her claim in 2005, and a hearing was held on her claim before an administrative law judge ("ALJ"). The ALJ entered findings of fact and rulings of law, finding that Lawson suffered a permanent partial disability as a result of the injury to her left foot, and awarding her compensation and future medical benefits. Ford filed an application for review to the commission. The commission entered its final award allowing compensation, affirming the award and decision of the ALJ and incorporating it by reference. The present appeal followed.

Pursuant to section 287.495.1 RSMo (2000), we review the award of the commission and we may only modify, reverse, or set aside that award upon the following grounds:

"(1) That the commission acted without or in excess of its powers;

(2) That the award was procured by fraud;

(3) That the facts found by the commission do not support the award;

(4) That there was not sufficient competent evidence in the record to warrant the making of the award."

█ We consider the evidence in the context of the record as a whole to determine whether sufficient competent and substantial evidence exists to support the award of the commission, or whether the award is contrary to the weight of the evidence. *Hampton v. Big Boy Steel Erection,* 121 S.W.3d 220, 222–23 (Mo. banc 2003).

In its first point on appeal, Ford argues that the commission erred in applying an incorrect burden of proof in making its final award. Ford claims that based upon changes to the Missouri Workers' Compensation Act in 2005, the commission should have determined whether Lawson's work activities were the "prevailing factor" in her alleged injury, rather than the "substantial factor."

█ Initially we note that Ford did not raise the issue regarding the application of the "prevailing factor" prior to this appeal. The findings of fact and rulings of law of the ALJ were entered after the amendments to the Workers' Compensation Act, as was the commission's final award. However, Ford did not raise the allegation regarding the application of an improper burden of proof at the hearing before the ALJ, nor did Ford make such a claim in its application to the commission for review. Generally, issues not raised before the commission may not be raised on appeal. *Miller v. Penmac Personnel Services, Inc.,* 68 S.W.3d 574, 578 (Mo.App.2002). However, we do have discretion pursuant to Missouri Supreme Court Rule 84.13(c) to review unpreserved claims for plain error if such an error results in a manifest injustice or miscarriage of justice. Thus, we review Ford's claim for plain error.

As Ford correctly notes, the legislature amended several sections of the Workers' Compensation Act in 2005. In particular, portions of section 287.067 and 287.020 were rewritten. Specifically, section 287.067.2 discusses when an injury by occupational disease is considered compensable. Prior to 2005, the section stated that such an injury will be compensable if it "is clearly work related and meets the requirements of an injury which is compensable as provided in subsections 2 and 3 of section 287.020." Subsections 2 and 3 of section 287.020 previously contained definitions for "accident" and "injury." Prior to 2005, those definitions included language which concluded that an injury was compensable if it is work related, which occurs

if work was a "substantial factor" in the cause of the disability.

After the 2005 amendments to the statutes, the definition of a compensable injury by occupational disease was changed to use the language "prevailing factor" in relation to causation. Specifically, section 287.067.2 states:

An injury by occupational disease is compensable only if the occupational exposure was the prevailing factor in causing both the resulting medical condition and disability. The 'prevailing factor' is defined to be the primary factor, in relation to any other factor, causing both the resulting medical condition and disability. Ordinary, gradual deterioration, or progressive degeneration of the body caused by aging or by the normal activities of day-to-day living shall not be compensable.

Section 287.020.3 defines "injury" using similar terms.

■ In the present case, Lawson filed her original claim in 2002, well before the 2005 amendment to the statutes. In its decision, the commission applied the pre-amended language, noting that to be compensable, work must be a substantial factor in causing the resulting medical condition or disability. Prospective application of a statute is presumed unless the legislature evidences a clear intent to apply the amended statute retroactively, or where the statute is procedural in nature. *Files v. Wetterau, Inc.*, 998 S.W.2d 95, 97 (Mo. App.1999) (citation omitted).

In its 2005 amendment to section 287.020, the legislature included subsection 10, which states:

In applying the provisions of this chapter, it is the intent of the legislature to reject and abrogate earlier case law interpretations on the meaning of or definition of 'accident', 'occupational disease', 'arising out of', and 'in the course

of the employment' to include, but not be limited to, holdings in: *Bennett v. Columbia Health Care and Rehabilitation*, 80 S.W.3d 524 (Mo.App. W.D.2002); *Kasl v. Bristol Care, Inc.*, 984 S.W.2d 852 (Mo. banc 1999); and *Drewes v. TWA*, 984 S.W.2d 512 (Mo. banc 1999) and all cases citing, interpreting, applying, or following those cases.

■ Ford claims that the legislature's comment in section 287.020.10 that it intended to abrogate earlier case law interpretations of the definitions contained in the statute prior to 2005 serves as evidence that the legislature intended the amendments to apply retroactively. We disagree.

The language in section 287.020.10 merely serves as clarification of the fact that any construction of the previous definitions by the courts was rejected by the amended definitions contained in section 287.020. There is no express language stating that it was the intent of the legislature to apply either section 287.020 or section 287.067 retroactively, nor did the legislature state that its rejection of the common law interpretations of the previous definitions applied retroactively. Instead, it appears from the plain language of the statute, the legislature merely intended to clarify its intent to amend the definitions and apply those definitions prospectively.

■ Additionally, the second exception to the presumption of prospective application, where the statute is procedural in nature, does not apply here. Substantive law relates to the rights and duties giving rise to the cause of action. *Files*, 998 S.W.2d at 97; (citing *Wilkes v. Missouri Highway & Transp. Comm'n*, 762 S.W.2d 27, 28 (Mo. banc 1988)). Procedural law is simply the mechanism through which the cause of action is carried on.

*Id.* Substantive laws set forth the primary rights and remedies of individuals concerning their property or person. *Id.* (citation omitted).

Here, Ford argues that the amendment merely changed the procedural law of workers' compensation because it modified the burden of proof from a showing that work was a "substantial factor" to a showing that it was the "prevailing factor" in causing the injury. Ford's argument is without merit. The change in the standard of causation to qualify as a compensable injury pursuant to the statutes did not merely affect the procedure or mechanism through which a suit is pursued. The definition of compensable injury is the very core of a claimant's right to compensation. The legislature, in its amendments to sections 287.067 and 287.020 altered that definition to state that an injury will only be compensable if work is the "prevailing factor" in causing the condition. The amended language, using the term "prevailing factor," resulted in a substantive change in the law which affected a claimant's right to compensation. Therefore, the law could not be applied retroactively as Ford claims, and the commission did not err, plainly or otherwise, in applying the pre-amendment "substantial factor" standard to Lawson's claim. Point denied.

In its second point, Ford claims that the commission's award of fifteen percent permanent and partial disability was not supported by competent and substantial evidence. Ford argues that the award was improperly based on Lawson's subjective complaints and work abilities.

In making its claim on appeal, Ford ignores well-settled case law which places the duty of accepting or rejecting medical evidence in the hands of the commission. *Russell v. Invensys Cooking & Refrigeration,* 174 S.W.3d 15, 23 (Mo.App.

2005) (citations omitted). We will affirm the commission's decision to accept one of two conflicting medical opinions if that decision is supported by substantial and competent evidence. *Id.* Where there are conflicting medical opinions, we affirm the decision of the commission in that regard unless it is against the overwhelming weight of the evidence. *Id.*

Lawson presented testimony from Dr. Volarich, a physician who examined her. Dr. Volarich diagnosed Lawson with "repetitive impact trauma" to her left foot which caused plantar fascitis. In Dr. Volarich's opinion, in Lawson's case the condition was due to the repetitive impact trauma to her foot caused by her foot hitting the edge of the platform in the course of her job. He assigned twenty-five percent permanent partial disability to Lawson's left lower extremity at the foot due to the plantar fascitis. Dr. Volarich testified that this rating accounted for Lawson's ongoing pain and weight-bearing activities.

In response to the testimony presented from Dr. Volarich, Ford submitted the deposition of Dr. David Andersen, an orthopedic surgeon. Dr. Andersen concluded that Lawson's condition was pre-existing and was not caused by work activities. However, Dr. Andersen did testify that Lawson's work activities could have aggravated the symptoms of plantar fascitis. He did not assign any permanent partial disability related to Lawson's employment as a result of her condition.

It is clear that there were two differing opinions about the cause of Lawson's plantar fascitis. However, the commission accepted Dr. Volarich's opinion concerning Lawson's injury and subsequent permanent partial disability and rejected Dr. Andersen's. Dr. Volarich's opinion was supported by Lawson's own testimony that while she experienced problems with her

heels in the past, those problems were resolved with treatment. She testified that she began having problems again when the nature of her job changed in 2001, and the discomfort was "much worse" and specific to her left foot and heel. She underwent surgery in 2001; however, this time treatment improved but did not resolve the symptoms. Lawson stated that she still experiences aching in her left foot which increases when she spends too much time on her feet.

The commission's decision to accept the medical testimony of Dr. Volarich was not against the overwhelming weight of the evidence. It was supported by competent and substantial evidence on the record as a whole, and as a result, we cannot conclude that the commission erred in affirming the decision of the ALJ. Point denied.

 In its third and final point on appeal, Ford claims the commission's award of future medical benefits was not supported by competent and substantial evidence. The commission found that there was a need for future orthotics to treat Lawson's condition and it found Ford responsible to provide the orthotics as needed. Ford's argument on appeal is based upon the evidence that Lawson had previously been prescribed orthotics. Ford claims that because Lawson previously used orthotics, they could not be in relation to the current injury. This argument is without merit.

 An employee does not have to present "conclusive evidence" of the need for future medical treatment to receive future benefits. *Fitzwater v. Department of Public Safety*, 198 S.W.3d 623, 628 (Mo. App.2006) (citation omitted). Instead, the employee needs only to show a "reasonable probability" that the future treatment is necessary because of his work-related injury. *Id.* The employee must show that the need for future medical care "flow[s] from the accident." *Id.; (quoting Landers v.*

*Chrysler Corp.*, 963 S.W.2d 275, 283 (Mo. App.1997), overruled on other grounds by *Hampton*, 121 S.W.3d at 226.)

Dr. Volarich testified that Lawson would need future medical care. He recommended medication, physical therapy, and orthotics. Because Lawson was taking over-the-counter pain medication, the commission rejected the recommendation of medication. Additionally, the commission found Dr. Volarich's testimony concerning physical therapy to be too speculative to meet the standard required for an award of future medical benefits. However, the commission did find Ford responsible for Lawson's future orthotics needs. This decision was supported by the testimony of Dr. Volarich and Lawson herself.

As noted, Dr. Volarich testified that Lawson would need "some change in orthotics" as her symptoms changed. Lawson also testified that she did not believe there was any time in the future when she would be able to stop wearing the orthotics. Ford's argument that Lawson was previously prescribed orthotics for her heel problems prior to 2001 does not negate this testimony. Lawson's injury from 2001 is a separate compensable injury, as previously discussed. This injury requires treatment, which includes the use of orthotics. Dr. Volarich and Lawson both testified that she would need the orthotics in the future, and therefore, the commission's decision to award future medical benefits in the form of those orthotics was supported by competent and substantial evidence. Point denied.

The final award of the commission is affirmed.

MARY K. HOFF and NANNETTE A. BAKER, JJ., concur.