Gary AHERN, Appellant/Employee,

v.

P & H, LLC, Respondent/Employer,

and

American Family Mutual Insurance Company, Respondent/Insurer.

No. ED 90341.

Missouri Court of Appeals,
Eastern District,
Division Three.

March 25, 2008.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 29, 2008.

Application for Transfer Denied June 24, 2008.

Michael Moroni Burns, Taylor Heckem-
eyer & Green LLC, Cape Girardeau, MO,
for Appellant.

Matthew E. Pelikan McAnany, Van Cleave & Phillips, St. Louis, MO, for Respondent.

ROY L. RICHTER, Presiding Judge.

Gary Ahern ("Claimant") appeals the final award of the Labor and Industrial Relations Commission ("Commission") denying him worker's compensation. We affirm.

## I. BACKGROUND

Claimant filed a worker's compensation claim against P & H, LLC ("Employer") after he fell from a roof in February of 2006 while working as a carpenter and injured his shoulder. Claimant alleged that his fall was due to a seizure caused by a prior motorcycle accident. The administrative law judge ("ALJ") denied Claimant's claim, stating, "[Claimant's] injuries did result directly or indirectly from an idiopathic cause (the employee's seizure), and therefore, under Section 287.020.3(3) [RSMo 2005 [1]] the employee's accident is not compensable." The Commission affirmed the ALJ's award of no compensation with one commissioner dissenting. Claimant appeals.

## II. DISCUSSION

■ The Missouri Constitution, article V, section 18, directs this Court to determine whether the Commission's award is "supported by competent and substantial evidence upon the whole record." *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 222 (Mo. banc 2003). By Section 287.495.1 RSMo 2000, we:

shall review only questions of law and may modify, reverse, remand for rehearing, or set aside the award upon any of the following grounds and no other:

(1) That the commission acted without or in excess of its powers;

(2) That the award was procured by fraud;

(3) That the facts found by the commission do not support the award;

(4) That there was not sufficient competent evidence in the record to warrant the making of the award.

In the interest of clarity, we address Claimant's points out of order, discussing Claimant's first, fourth, fifth and sixth points first. In his first point, Claimant asserts the Commission erred in defining "idiopathic" as contained in Section 287.020.3(3) to mean "peculiar to the individual, innate" because the Commission relied on abrogated case law for such definition. Claimant further argues that the correct definition of "idiopathic" is a dictionary definition, namely, "of a disease or injury whose cause is unknown." In his fourth, fifth and sixth points, Claimant asserts the Commission's definition of "idiopathic" conflicted with the Americans with Disabilities Act ("ADA"), violated the open courts provision of the Missouri Constitution, and violated the equal protection clauses of the United States and Missouri Constitutions, respectively. On all counts, we disagree.

Initially, we note that Claimant's assertions of error are primarily related to recent changes in Section 287.020 of the Worker's Compensation Act. In 2005, the Legislature amended Section 287.020.3, in part, by adding subsection (3) which reads, "An injury resulting directly or indirectly from idiopathic causes is not compensable." In addition, the Legislature further amended Section 287.020 by adding Section 287.020.10, which states, "[I]t is the intent of the legislature to reject and abrogate earlier case law interpretations on the

---

**1.** All further statutory references are to RSMo 2005 unless otherwise indicated.

meaning or definition of 'accident', 'occupational disease', 'arising out of', and 'in the course of employment'. . . ." This case provides this Court a first opportunity to evaluate such amendments.

 In his first point, Claimant asserts that the Commission erred in relying on *Alexander v. D.L. Sitton Motor Lines*, 851 S.W.2d 525 (Mo. banc 1993) for its definition of "idiopathic." Although Claimant does not concede that Section 287.020.10 abrogated *Alexander*, Claimant argues that if *Alexander* was, in fact, abrogated, its definition of idiopathic was abrogated, as well. Claimant misreads Section 287.020.10. This section is silent regarding the definition of "idiopathic." Such definition has been traditionally defined through case law. Unless a statute clearly abrogates common law by express statement or by implication, the common law stands. *Mika v. Central Bank of Kansas City*, 112 S.W.3d 82, 90 (Mo.App. W.D. 2003). Because Section 287.020.10 neither expressly nor implicitly abrogates earlier case law interpretations of the definition of idiopathic, the Commission did not err in using *Alexander*'s definition. Thus, we agree that *Alexander*'s defining idiopathic to mean "peculiar to the individual, innate" is still good law.

 Claimant next asserts that his condition at the time of his fall was not idiopathic in that his seizure disorder was not innate. Claimant directs this Court to a dictionary definition of "innate," contending that, as used in the statute, this term means "inborn; natural" and therefore, idiopathic conditions are only those born to a party. However, Claimant, again, ignores case law. Employer aptly asserts that *Haynes v. R.B. Rice, Div. of Sara Lee*, 783 S.W.2d 403, 407 (Mo.App. W.D. 1989) defeats Claimant's argument. In *Haynes*, a worker fell and scalded himself after injecting himself with cocaine.

*Haynes*, 783 S.W.2d at 404. In affirming an award of no compensation, the Western District of this Court cited the Commission's judgment which stated that claimant's fall was not work related, that it was "an idiopathic fall or blackout." *Id.* at 404, 407. In light of this statement implying that a drug induced fall may be idiopathic, we fail to see how an idiopathic condition must be inborn. Accordingly, we are not persuaded by Claimant's argument. Given the *Haynes* decision, as well as the dearth of authority supporting Claimant's position, we cannot say the Commission erred in finding that Claimant's condition was idiopathic. Point denied.

In his fourth point, Claimant asserts that the Commission erred in defining idiopathic because its definition caused RSMo 287.020 to conflict with the ADA. We disagree.

 Under the ADA, employers are prohibited from discriminating "against a qualified individual with a disability because of [his] disability." 42 U.S.C. Section 12112(a). Federal courts have outlined various tests for demonstrating that an employer's actions violate the ADA. However, all such tests require "a showing that the circumstances surrounding [an] adverse employment action indicate that it is more likely than not that an [employee's] disability was the reason for it." *Timmons v. General Motors Corporation*, 469 F.3d 1122, 1126 (7th Cir.2006).

 Here, Claimant asserts that the Commission's definition of idiopathic, and its resultant decision, violated the ADA because disabled employees are denied compensation when their injuries result "directly or indirectly from idiopathic causes," or causes "peculiar to the individual, innate." *See* Section 287.020.3(3). In making such argument, Claimant overlooks a critical element of the ADA, name-

ly, that in order to prevail under the ADA, an employee must demonstrate that an adverse employment action was taken because of an employee's disability. Claimant has failed to show that the denial of compensation for injuries related to idiopathic causes is more likely than not due to disability. *See Timmons*, 469 F.3d at 1126. To the contrary, the decision whether to award compensation based on an injury's relation to an idiopathic, or innate, cause is, instead, a question of causation. Accordingly, denying compensation when a claimant's injury results directly or indirectly from idiopathic causes does not violate the ADA.[2] Point denied.

In his fifth point, Claimant contends the Commission erred in defining idiopathic because its definition rendered Section 287.020 violative of the open courts provision of the Missouri constitution. We disagree.

■■■■■ Before we address Claimant's point, we must first determine whether such review is proper. Pursuant to article V, section 3 of the Missouri Constitution, the Missouri Supreme Court has exclusive jurisdiction in cases involving the validity of a statute. *See Higgins v. Treasurer of State of Missouri*, 140 S.W.3d 94, 98 (Mo. App. W.D.2004). However, a party's mere assertion of unconstitutionality does not deprive this Court of jurisdiction. *Dubinsky v. St. Louis Blues Hockey Club*, 229 S.W.3d 126, 131 (Mo.App. E.D.2007). When a party's claim is not real and substantial, but, instead, merely colorable, our review is proper. *Id.* Here, the constitutional claim raised by Claimant is not real

and substantial and, accordingly, our jurisdiction lies.

■■■■■ "The [open courts] provision of the Missouri Constitution ... prohibits any law that unreasonably or arbitrarily bars individuals or classes of individuals from accessing the courts in order to enforce recognized causes of action...." *Missouri Highway and Trans. Comm'n v. Merritt*, 204 S.W.3d 278, 285 (Mo.App. E.D.2006). Moreover, this provision only applies to judicial or legislative acts posing a procedural bar to Missouri court access. *Id.* Here, Claimant's argument wholly misses the mark in that Claimant was not barred from enforcing a recognized cause of action. Claimant followed all steps necessary to file a worker's compensation claim and, indeed, was given a hearing and a decision. While Claimant asserts otherwise, Claimant's disagreement with the ultimate outcome of his suit does not constitute an inability to enforce a cause of action. For this reason, the Commission's definition of idiopathic did not cause Section 287.020 to violate the open courts provision of the Missouri Constitution. Point denied.

In his sixth point, Claimant asserts that the Commission erred in defining idiopathic because such definition rendered Section 287.020 violative of the equal protections clauses of the United States and Missouri Constitutions. We disagree.

■■■■ As discussed above, the Missouri Supreme Court has exclusive jurisdiction in cases involving the validity of a statute. *See Higgins*, 140 S.W.3d at 98. However, here, because the constitutional claim

**2.** To the extent Claimant argues that his rights under the ADA were violated, Claimant has provided no support for such assertion, argument or otherwise. Moreover, as noted by Employer, Claimant has failed to cite to any portion of the record demonstrating that Employer is subject to the ADA, having 15 or more employees, the threshold below which an employer's acts are not covered. *See* 42 U.S.C. Section 12111(5)(A). In addition, Claimant has also failed to set forth facts indicating that he has a recognized disability under the ADA. *See* 42 U.S.C. Section 12102(2).

raised by Claimant is not real and substantial and, instead merely colorable, our review is proper. *See Dubinsky*, 229 S.W.3d at 131.

■ In determining whether a statute violates the equal protection clause, we must first decide whether a classification "operates to the disadvantage of some suspect class . . ." *Etling v. Westport Heating & Cooling Services, Inc.*, 92 S.W.3d 771, 774 (Mo. banc 2003) (citation omitted). Claimant concedes that as a person "suffering from seizure disorders," he is not part of a suspect class. Therefore, our review is limited to determining whether distinguishing between claimants with injuries stemming from idiopathic conditions, defined as "peculiar to the individual, innate," and claimants without idiopathic injuries is rationally related to a legitimate state interest. *Id.* We find that it is.

■ Injuries resulting directly or indirectly from idiopathic conditions are not wholly work related. *See* Section 287.020.3(3). The purpose of the workers' compensation act is "to place upon industry the losses sustained by employees resulting from injuries arising out of and in the course of employment." *Schoemehl v. Treasurer of State*, 217 S.W.3d 900, 901 (Mo. banc 2007). We fail to see how distinguishing between injuries caused directly or indirectly by idiopathic conditions and injuries unrelated to idiopathic conditions is not rationally related to achieving the legitimate state interest of compensating employees whose injuries arise out of and in the course of employment. Accordingly, point denied.

We next address Claimant's remaining two points. In his second point, Claimant asserts the Commission erred in applying Section 287.020.3(3) in that while Section 287.020.3(3) states that "[a]n injury resulting directly or indirectly from idiopathic causes is not compensable," Claimant's seizure was only one cause and not "causes" of the injury he sustained. We disagree.

■ Claimant places emphasis on the fact that Section 287.800.1 mandates that the Worker's Compensation Act be strictly construed. Claimant further asserts that in reading Section 287.020.3(3), this Court must consider the plain and ordinary meaning of the words used therein. *See Dubinsky*, 229 S.W.3d at 130. While we agree with Claimant's propositions, Claimant, nevertheless, misreads Section 287.020.3(3) in asserting that such section only applies when an injury results from multiple idiopathic causes. Instead, we read this section to indicate that a vast number of possible idiopathic causes exist, any one of which will render a resultant injury noncompensable. Accordingly, the Commission did not err in applying Section 287.020.3(3). Point denied.

In his third point, Claimant contends the Commission erred in applying Section 287.020.3(3) because under the "increased risk analysis" Claimant's claim would be compensable. We disagree.

Claimant likens the circumstances of this case to those in *Alexander v. D.L. Sitton Motor Lines*, 851 S.W.2d 525 (Mo. banc 1993). In *Alexander*, a claimant became dizzy and fell from a raised platform on which he was required to work. *Alexander*, 851 S.W.2d at 526–27. In finding compensation proper, the Supreme Court indicated that a causal connection existed between claimant's injury and his work because his workplace contributed to, or increased the risk, of his accident. *Id.* at 528–529. While the facts of *Alexander* are similar to those of Claimant's case, in light of the Legislature's 2005 amendment of Section 287.020, we cannot apply *Alexander's* holding here. As discussed above, Section 287.020.10 states, "[I]t is the intent of the legislature to reject and abrogate

earlier case law interpretations on the meaning or definition of 'accident', 'occupational disease', 'arising out of', and 'in the course of employment'...." Claimant asserts that this section does not abrogate *Alexander*'s holding because *Alexander* was not mentioned by name. Such reasoning is overly simplistic.

Section 287.020.10 abrogates *Alexander* because *Alexander* interprets the meaning or definition of "arising out of," and does so explicitly.[3] In addition, a careful reading of Section 287.020.10 reveals that Claimant's argument must fail. By its words, Section 287.020.10 indicates that its abrogation is not limited to simply those cases named therein but any case interpreting a number of key terms.[4] In light of these circumstances, we cannot say the Commission erred. Point denied.

## III. CONCLUSION

The judgment is affirmed.

CLIFFORD H. AHRENS and GLENN A. NORTON, JJ., concur.

---

3. "If we are to give full meaning to the statutory language that injuries are compensable dues to accidents 'arising out of' the employment, we must recognize that the precipitating cause of the accident may not be the sole cause, and that the proper test of 'causal connection,' simply put, is whether the conditions of employment caused or contributed to cause the accident." *Alexander,* 851 S.W.2d at 528.

4. "[I]t is the intent of the legislature to reject and abrogate earlier case law interpretations on the meaning of or definition of ... 'arising out of' ... to include, *but not be limited to* holdings in...." Section 287.020.10 (emphasis added).